No. 80.—HENRY N. ELLS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] On a trial for an act of fornication, the Court charged the Jury, that if " they believed the parties were found on the bed together; that the door of the room was closed; that there was no one else present in the room; that the woman was a prostitute, and that defendant was frequently in the habit of visiting her house, they were bound to find the defendant guilty :" *Held*, that this charge was rather too strong.

Indictment for misdemeanor.   Tried before Judge POW-ERS, May Term, 1856.

An indictment for fornication against Henry N. Ells was found at the last May Term of Bibb Superior Court, and the case called up for trial at the same term.   The defendant moved to continue, and testified, in support of the motion, that the indictment had been found only two days previous; that he was then in the country and did not hear of it until late at night of the day of the finding; that his business kept him in the country all of the next day, except that he took time to come in and give the usual bond for his appearance; that he was not ready for trial; that he wanted the case continued for the term so that he might have time to prepare his defence; that there were witnesses absent by whom he expected and believed he could impeach the testimony of Thomas Knight, the main witness for the State; that he had just been informed he could impeach said Knight by two witnesses whose names he could not recollect, but they lived near the court-house square; (he pointing out the house or towards the house from where he stood, across the road south of the court-house;) that the case had been called so early that morning he had not had time to subpœna said witnesses or get them in Court.   He further stated, that he had just been informed that said Knight had recently threatened Zelia Guimarin (who is the other party to the alleged fornication) with his vengeance, and intended to make her pay

thousands of dollars before he quit her, and that he had procured this indictment against her and defendant from private pique against her; and further, that he did not make this application merely for delay, but to get a fair trial; that he expected to obtain the testimony of said witnesses at the next term of the Court; that said witnesses were not absent by his consent or procurement; that he had used all the diligence circumstances would permit to be ready for trial; that said witnesses lived in Macon, and he had not subpœnaed them, and that all he wanted was a fair trial.

The Court over-ruled the motion for a continuance and ordered the trial to proceed.

A Jury having been agreed upon, the Solicitor General opened the case on behalf of the State, read the bill of indictment, &c. then swore Green J. Blake, Thomas Knight and Andrew Pye, who testified to the Jury. The Jury were then addressed by Counsel for the defendant and the State; the Court charged the Jury and directed them to retire and deliberate, but as they were about to retire, one of them informed the Court that they had not been sworn in that particular case.

Whereupon, the Court stated to defendant's Counsel that they might continue the case, strike another Jury or swear that one, and go on with the trial. Defendant's Counsel declined to accept either proposition submitted by the Court, and moved the Court to discharge defendant; which the Court refused to do.

The Court then directed the Jury agreed on in the first instance to be sworn and the trial to proceed before them, and they having been sworn, (defendant excepting to the whole proceeding,) GREEN J. BLAKE was introduced in behalf of the State, and testified that Zelia Guimarin was a prostitute and an unmarried woman; that defendant was an unmarried man; that he had seen defendant at her house some 6 or 7 seven times during the last two years; that he never saw him take any indecent familiarity with her; that when he saw defendant at her house, defendant was sitting in a

chair like other people; that defendant was the agent of Miss Guimarin in the management of her property.

THOMAS KNIGHT testified that he was not on very friendly terms with one of the parties, and would like to be excused from testifying; that he had been intimate with Guimarin before she left for California; since her return he had not had much to do with her; he did not know that defendant had confessed to him within two years that he had had intercourse with her, nor did he recollect having seen defendant in bed with her but once in two years; had frequently seen him in bed with her, but could certainly identify only one occasion in two years, which was sometime in the month of December last, before Christmas, at her house, in Bibb County; that the outside door was open; the door of the room in which they were was closed; no one but the parties were in the room, and no other white person but a small boy was in the house.

Cross-examined: The door was closed, but not locked; witness turned the bolt and entered the room; no one announced his approach or intention to enter; the parties manifested no confusion or shame; saw no indecent liberties taken; no surprise was manifested upon his entrance at the time; was in the habit of entering without ceremony whether Miss Guimarin had company or not; it was cold; they were lying on the bed without any covering over them; does not know whether the parties had on all their clothing or not, but is certain if any part of defendant's clothing was off he was not stripped to his shirt-tail; has frequently seen a man and woman lying on the bed together and did not believe they intended to commit the crime charged.

Here the evidence closed.

Defendant's Counsel requested the Court to charge the Jury, that when the act is not proven by direct testimony, and circumstances are relied on to prove it, they must be in their nature and character of such a conclusive character that they exclude all reasonable doubt from the minds of the Jury, in

order to justify them in finding the defendant guilty; that the Jury are the judges of the law and the facts.

2d. That the law, in its humanity, presumes the innocence of every one until his guilt is established; and that if they have reasonable doubts of defendant's guilt, they must give him the benefit of those doubts and acquit.

The Court read over the requests to the Jury and said. they were correct, but he still adhered to the charge he gave before; that from the character of the offence, positive evidence was hardly attainable; that resort must be had, as a. general thing, to circumstances to prove this offence; and that if a single and unmarried man was found upon a bed, day or night, with a single woman, by themselves, the door being closed, the law presumes, and the Jury might presume, he either had or intended to have unlawful intercourse with. her; that if the Jury believed the parties were found on the bed together; that the door of the room was closed; that there was no one else present in the room; that the woman was a prostitute, and that defendant was frequently in the habit of visiting her house; then, in the opinion of the Court, they were bound to find defendant guilty.

The Jury found the defendant guilty, and he excepts and. complains—

1st. That the Court erred in over-ruling his motion for a continuance.

2d. That the Court erred in the direction it gave to the case after ascertaining that the Jury had not been sworn, and in refusing then to discharge defendant.

3d. That the Court erred in merely reading over defendant's requests, and stating that they were correct; but he still adhered to his former charge.

4th. That the Court erred in its charge to the Jury.

R. S. LANIER; MILLER & HALL, for plaintiff in error.

T. W. MONTFORT, Sol. Gen. for the State.

*By the Court.*—BENNING, J. delivering the opinion.

The question on the evidence in this case was, whether the. defendant was guilty of an act of fornication with the woman, Guimarin, *during the time when he was lying on the bed with. her ?*

[1.] And on that question, the charge of the Court to the Jury was as follows : " That if the Jury believed the parties were found on the bed together ; that the door of the room was closed ; that there was no one else present in the room ; that the woman was a prostitute, and that defendant was freqently in the habit of visiting her house, they were bound to find the defendant guilty."

The charge amounts to this : that certain *circumstances* are such, that if they exist, they *conclusively* call for the pre- sumption of guilt.

And its effect on the Jury, if respected by them, must have been to exclude from their consideration every circumstance in the case, except the circumstances referred to by the charge itself ; and every conclusion possible to be drawn. even from these circumstances, except the one drawn by the charge.

Now circumstances, as we think, can hardly be such that they shall be *conclusive* of guilt. They may easily be such. that they shall raise a " strong" or a " violent" presumption of guilt. And they were such, no doubt, in this case ; but we cannot say that we regard them as having been conclusive of guilt.

Therefore, the charge, as we think, was erroneous.

No reliance was placed on the other grounds, and they are. such that it is manifest none ought to have been. The Court, at last, offered the accused a continuance, but he would not. accept one.